All right, so the next item on the docket is Smoke Services Restoration, Inc. v. Caseyville Hospital Group, LLC at 5-24-0686. Mr. Kinsley? Yes, Your Honor. All right, for the accountant and Mr. McGlynn for the appellee. Are you ready? I am. All right, you may proceed then. May it please the Court, Your Honor, as counsel. If you would, state your name in the microphone. Jay Kinsley, for the defendants. Your Honor, the talk related in this case, and this case should reverse and remand the case for the following reasons. First, the one-page document that was attached as Exhibit A to the amended complaint is not an enforceable contract. It is too vague. It does not set forth the scope of the work to be performed, how long the work would take. Most importantly, how much would the work cost? And without an enforceable contract, you can't have a breach of contract. Counsel, how do you get over the fact that I believe at the trial level that trial counsel agreed that the contract was a valid existing contract? That's not, again, so I was trial counsel. Okay. And just so you know. And it was, that is not the context in which that was stated, Your Honor. What was stated was that the parties had entered into an agreement. I would contend that there was an oral agreement. Okay. And that the oral agreement was, we will perform work, and we will pay, and you will tell us what work you're going to perform, and then we will agree upon the reasonable rate for that. Now, you can have the intent to contract, but not have an enforceable contract. Okay. You and I can say, we intend to contract. We want to have an agreement, but the terms are too vague. It is not enforceable. So, Your Honor, I would say that that was never a concession. Okay. Thank you. Second. Counsel, did the trial court reserve the attorney fee? It did after holding, and then it was submitted by affidavit afterwards. And I filed, proposed, I don't want to say fines, in fact, but I proposed to the court why I believe that it should fine in favor of the defendants. But there's no final order on attorney fees, right? That's a great question, Your Honor. And there was no 304A finding. So, how do we have jurisdiction? Great question, Your Honor. I'm not ready to address. I just don't know. Okay. I apologize. And if you don't, then I'm sure you will rule accordingly. So, may I continue on then? Yes. Okay. The second point is, and I want to make this with the caveat, that I do not believe there is an enforceable contract here. But if this court were to determine that there was an enforceable contract, you still have to reverse and remand, because there is no evidence that there should be joint and several liability with both defendants, KCville Hospitality Group and Shika Meir. Okay. It's just, it's not there. And I put this in the brief, and we may get to it in a little bit, about why that's the case and what the judge said at the time and then what the evidence was. So, therefore, the court should reverse the judgment. Now, on the first point, the one-page document, okay, there's no other document attached to the amended complaint. There's no other document referred to in the amended complaint. Plaintiff's case has to stand or fall on that one page, right? And this one page cannot support a breach of contract because it's not a contract. And as the court in Set Environmental stated, and that's cited in my briefs, to be enforceable, a contract must be sufficiently definite and certain that a court is able to ascertain from its terms what the party's intended. The document here is too vague to be enforceable. No scope is defined except it says cleaning and or packing, moving storage, and repair of the property. Set Environmental, though, wasn't that a summary judgment motion? It was, Your Honor. All right, so, I mean, this went to bench trial, correct? That is correct, Your Honor. All right, so we have a different standard in terms of review. That's way to the evidence. I'm sorry, Your Honor, I didn't mean to interrupt. No, go ahead. And I would say that as to whether there is a contract or not, this court, I believe, has de novo review. That is a legal issue, right? So what the court said is that one page document is a contract. And this court can say, no, it is too vague to be a contract as a legal fact. Again, it's too vague to be enforceable. It doesn't say how long the work will take, what the cost will be, and it doesn't say how those missing terms will be decided or who will even decide those terms. Does it make a difference that, I can't remember the term off my head, someone who is overseeing all this work? A project manager. I'm sorry. Does the fact when you add that equation in and how everything was done during the whole process, does that change? And basically the parties were proceeding as if the contract was a valid and enforceable contract. I don't believe it changes it for two reasons. One, none of that is stated up front. So what we have is the set environmental blank check. In the set environmental, they said, listen, you can't fill in those blanks by invoices. And that's what they want to do here. They say, well, we have this exactimate, which my client never received, was never part of the contract, never reverted. And therefore, that's standard in the industry. I don't believe that that fills in the blanks of the contract. But along those same lines, wasn't that project manager likely signing off on those invoices and those work, the tickets for the work that was being done? I'm sorry. The project manager was not. He was not overseeing the work that was being done? She worked for the plaintiff, not for nobody. There was Dan Long, the public adjuster. The public adjuster is what I'm referring to. So the public adjuster, though, wasn't he overseeing the work that was being completed so that the money could then be transferred from the insurance company to the owners to pay for that work? There was no testimony at trial from Mr. Long regarding what he did or how he determined that. Yeah, nobody called Mr. Long. I think that's really interesting. So I don't know, Your Honor, in how to answer that. But I would still say no because, again, you have to start from the proposition that there is a contract. Now, I don't like to quote long quotes, but I think if I may just briefly from Set Environmental. They said, as in Wilkerson, in the case of Barr, one party's performance of the contract consisted of doing work and the other party's performance consisted of paying for it. Work and payment were the material or essential elements of the contract. Yet neither the ultimate scope of work nor the ultimate payment was specified in the contract. Set, who drafted the contract, seeks to fill in both blanks with its own bills and invoices. Set argues, in essence, that by signing the contract, power gave it a blank check. Whether Set sent a bill for $100,000 or $1 million, under Set's argument, power would be obligated to pay it. Now, I pointed this out in my reply brief. As a result of this, we had people, in essence, charging $370 an hour for work they would be paid $15 to $20 an hour for. And this isn't complicated work. This is wiping down furniture with a rag with some bleach on it. The counsel attested that that may be a stretch. If I recall the testimony, because I read the transcript, was that there was equipment that was brought in. There was, you know, other costs, workers' comp, things like that. If I recall, wasn't that the testimony as well? There was some testimony that there were fans brought in. Okay. That they moved that air. They keep it circulated. And that there were some other small, you know, devices that they used. But the vast majority of what was going on there was wiping down the walls and the furniture. In one, in the exactimate, there was one task of, in the charge, $214 for five minutes of work of picking up dust in a dustpan. See, that's the problem with a contract that's a blank check. Just like they said in SEC, whether it was $100,000, $1 million, there is no discussion on that one page of what was going to be charged for this. My client had no idea that this was going to cost $189,000 or whatever the, you know, the number was all over the place. What was the amount ultimately, if I remember correctly? Half a million dollars was retrieved from the insurance company? Does that make sense about record? You know, and that is still the lead issue. They still haven't collected all their money. Now, that's not in the record, but see, and that's part of the problem here. But was that number over $500,000? Was Justice Boone correct? That sounds in the neighborhood, sir. But remember, that goes to repairing the fire damage as well, replacing the building, the roof, the things like that. I understand that. I know we're just dealing with one portion of the cleanup. Correct. But there was sufficient proceeds from the insurance company that paid the plaintiff for their services. It didn't come out of anybody's personal pocket. Well, it depends. Again, that money, there was not money to do both at this point. Okay. To fix the building and pay $200,000, give or take, that way. Okay. And there were offers made. I don't want to get into settlement, but it's fine to say, hey, yes, we didn't try to stiff them, but it was the bill. I'll go to the second point very quickly. Again, saying there's the manifest way of the evidence is that there is no way that the judgment could be issued against both defendants. If you look at the brief from the plaintiff, they just say, yeah, it should be. They don't tell you a statute, a case. They don't even give you a legal proposition as to why. But they do say, they say, well, listen, the judge said this. Lisa, and that's the project manager, this is the plaintiff's project manager. Lisa testified that she sat down with Mr. Amir on the contract and intended for both Mr. Amir and Days Inn to be on the contract. Although certainly the Days Inn was meant to be Collinsville Hospitality and not Days Inn Corporate. So there are a couple problems with that. You look at that one-page document. Nowhere does it say Caseyville Hospitality Group, LLC. Nowhere. I don't know how you can hold a company liable when that name is nowhere in there. But more importantly, the judge's statement, which he, I don't want to say rattled up, but which he made at the close of evidence as part of the record, just doesn't match up with the facts. Lisa testified that she met with Shaik Amir, and she said, I thought Mr. Amir was the only person executing the contract. She said, she was asked whether she knew the hotel was owned by a company, and she said at the time of executing the document, she did not know it was owned by a company. She was asked if she'd seen any documents in the building. She was told, no, I hadn't seen any that would say. So there's nothing to support the trial court's finding that Lisa intended Days, or Caseyville Hospitality Group, LLC, to be bound. And the testimony at trial was conflicted. You know, Mr. Amir said, I'm the manager. I didn't intend for this to be on me. It was always going to be on the owner of the hotel. She's, Lisa said, just the difference. So you can't support joint settlement liability. For that reason, you have to remand it back and make a determination. If there are no other questions, I assume my time is up. Thank you. Good morning, Justices. Michael McGlynn on behalf of the appellate plaintiff. And I would say that the facts were, I think, misconstrued. And I think the law was misconstrued in the earlier argument by counsel. And so I'm going to try to correct it. With regard to jurisdiction, Your Honor, what happened was, I would commend the court to read. It's pretty brief. But starting on my brief at page 9, the findings of fact and conclusions of the trial judge, he did just a great job. He did a better job there maybe than I'll do today. But he did a wonderful job because he had had cases like this before and knew of the software that insurance companies required to be used. He knew Dan Long. He knew that he was a public adjuster. What a public adjuster does, he knew who Dan Long was. And he knew how these cases proceed. And so as far as jurisdiction is concerned, when you read through what the judge did in a very succinct way, he really got everything and he put it into that three pages that I have reproduced here. He did a very good job in terms of marshaling all of the evidence and putting it into a succinct form to give his conclusions and his findings. But as far as the jurisdiction is concerned, he talked to us in the bench trial immediately after the close of the evidence. He was so sure of things. He said, it's an easy, easy case. He was so sure of things, he said, I can announce right now. And so he did. But he reserved attorney's fees. He said, how are you going to handle that? And we had agreed we'd handle it by way of affidavit. So then later an affidavit was filed of the attorney's fees, wasn't objected to in terms of the attorney's fees, and then the court said, oh, shoot, I didn't see that you had submitted that. Let's get together and we'll just add a judgment. So we added a judgment that he did file a notice of appeal within 30 days. So the attorney's fees was the last leg of that final judgment that the judge signed off on. He announced from the bench what he was going to do, but then said, look, we'll do it formally when I get the attorney's fees, which we can handle by affidavit. And we have an order in our office. Yes. That's in the final written judgment. He did, right. And he did appeal within 30 days of that judgment. Okay. And so what's really interesting about the judge, and he does such a really good job, is that he's had these cases before, and so he's familiar with how these work. And so he sets it out. For example, he talks about how the standard of the industry that you use is exacted. Okay. So he really knew what he was doing. And so he says there's no dispute that this is the reasonable, necessary, fair, customary way to do it, and that the fees earned in B and C exhibits were reasonable, customary, in the ordinary course of business for work that smoke services did to the hotel rooms at that. Now, the significance, I'll go back to what the facts are in the overall picture here, that the judge does a really good job on here in describing, but it's extremely important that what this hotel operator does is he hires a public adjuster. A public adjuster the judge knows. A public adjuster has a job, which is described in the record, and the job is to work with the insurance company to make sure they get paid. And incidentally, he testified, well, I've received between $500,000 and $600,000, over $500,000 from the insurance company. That's what he testified to. But Dan Long he hired because he wanted someone who he said was an expert. I've never done this before. I called over to St. Louis. I talked to people that I knew. They said hire a public adjuster. I talked to the public adjuster that I knew or that I was recommended to over here. He said hire Dan Long. So Dan Long was his expert to oversee the entire process with the insurance company, but also the day-to-day putting together of the exactimate cleanup situation. So what does that involve? Dan Long recommended our people, our mom and pop operation, that combined the two principles have been at this for 60 years. And so Dan Long, his representative, recommends, I think you should hire these folks. They come in and they sign the initial contract. And a contract is a contract. A contract is an offer, it's an acceptance, and there's consideration. It is a contract that you could have an offer, you could have an acceptance, but you have to have consideration. But that's a contract. What about this issue, though, that the Caseyville Hospitality Group was not named in the contract? Oh, well, their DBA was named. So it's also Shafiq Amir, and then right under that it's Days Inn. So it's what they were doing, their DBA. And so he says here, I've got it quoted on page 7, Mr. Tanzler, we agreed to the contract. We agreed that the company came in and did it. And he goes on to say, my client, Caseyville Hospitality, signed the contract. And then he says, he's talking about it doesn't say amount that would be paid. All right, well, we can get to that. But remember that it's critical, and he left out a statement of facts, that a public adjuster was an expert here who was supposed to oversee from the beginning to the end. That's the way you get paid by an insurance company. That's something that comes in like a plaintiff's lawyer and helps you to get paid in a firewall space. And the judge knew this, and that's why his opinion is so good. So he points out that when you read through the contract, it says, and I'm paraphrasing, it says we have to come in, we have to do this work according to industry standards, and it will be done according to industry standards. Okay, now, the reason why the judge pointed out this exactly is that that is the software that the insurance industry requires that the public adjuster use in order to make his appeal for payment in the case. And it's the software that my client puts together. My client, what he has to do is he has to work with Dan Long, their public adjuster, and they have to put together the hundreds of pages in specific detail as to everything, square foot counts, chairs, benches, whatever, that they have to wipe down with chemicals. Every square centimeter, those are counts. And then also what they have to do is they have to bring in this machinery, clear human beings out of the way with some of it, a couple of different kinds to suck all of that smell out of a hotel, which, incidentally, the city had closed and said, help me get this open right away, which the judge mentions, too, it's an emergency, let's get this done. So Dan Long's in there, he's overseeing the whole process, and what do they have to use? They have to use exactly. And so you see hundreds of pages, well, how do we decide what Mr. Morrow should be paid for the work? Mr. Morrow didn't decide. Dan Long didn't decide. Exactament decided what was to be paid under these circumstances, and that's what the judges say. They have to use the insurance company's software, and it's meticulous. It says exactly what they're going to get paid for square footage. So now when you take a look at what the judge says here, he's talking about exactament is the standard of the industry. There's no dispute. They didn't bring in an expert. They didn't bring Dan Long in to say, oh, I wasn't familiar with the contract. I wasn't familiar with exactament. My people testified, yeah, we worked with Dan on a day-to-day basis, and we had to go through the software with him, the exactament. He contributed to that, oversaw it, made sure we did the work, and so did the insurance company come in. The judge says the estimates were double-checked by the insurance company and Dan Long. So the hundreds of pages of exactament, they are the fill-in to the contract and are anticipated in that industry as to how you're going to decide what the insurance company is going to pay and what is an appropriate payment. So now, for example, that's like the Marcus at Queensberry. Those are the rules of a file-offs case. So when I was in college at Notre Dame, I had the privilege of Professor Cornelius Delaney, who was the head of the department, and he gave what I consider to be a particularly onerous assignment, and some other poor students said, well, Professor, how many pages do you expect us to write on this? And he said, you can write two, you can write five, you can write 50, you can write 100, but make the first three your best because those are the only pages I'm going to read the first three. And so here, what I'm saying is that we could have put in all kinds of evidence, Dan Long, we could have went to the insurance company, we could have said do this, do that, here's the amounts, and the insurance company said the only thing we're going to read is you filling out our software the way it has to be filled out, and we're going to pay you a dime unless you do it our way. And so that's why the judge is saying this exact amount is so important. That's what's going to be paid for that square footage, for the use of the machinery, the ozone generator and the hydroxyl generator, people using the chemicals to wipe everything down. That's what's going to be paid. There's no, that's it. It doesn't matter how many pages they submit, they're only going to read the three. They're only going to read what exactly it kicks out. And so that's what the numbers were. Now, the interesting thing is obviously Dan Long and the insurance company would be meticulous at overseeing this to make sure that the work is done and how much money is going to be paid for it. And as this guy said, I got to pay over $500, more like $600 in testimony. And so he says, well, he wants to say it's in, well, I never saw that. Well, the judge didn't believe him. First of all, he's got an expert that's supposed to do things for him, but he wrote one check to Myra's firm for $50,000. Now, on the check, it makes a note. It makes a note, $50,000, and then it says total amount $180,485.38. And so I said, is that your handwriting? This is on page four of my brief. That's my handwriting. I don't know where I got that number, $180,485.38. That is the exact amount listed on the bill for the structure cleaning from Smoke Services. That's the exact number on that check, right? That's right. Okay, so here's the guy that says he doesn't know anything about what the fair, reasonable charges are, what's going to be provided, even though he's got hundreds of pages that were put together in meticulous detail through the executive. And his client obviously saw the number. There were two. There were two numbers. One was the cleanup contracts, hand scrub, okay? That was through executive, and that was $57,000. The other was where they're getting all the smoke out of the air and all of the sift out of the rooms and floors, carpet, walls, whatever. That was $180,485. So obviously this man was aware of, he puts on that $50,000 check, total amount $184,85.38. He knew what the structure loss was going to be paid. And so I'll go through a couple of other things for you. We did go through the jurisdiction. We did go through the attorney's fees. When somebody says they have a contract, a contract is a conclusion. There's an offer, there's an acceptance, there's consideration. But a contract, when somebody stipulates, we have a contract signed by my client, there's a contract, there's an agreement. Now, industry standards allow somebody to look to these hundreds of pages, which Dan Long knew and which my guy knew, were going to be required by the insurance company. And the judge is saying, there's no other way to calculate this. You guys, it's like Professor Delaney said, I don't care what you're writing. You better put it in the first three pages or I'm not going to read it. That's what this is with the executive. And so that's why the judge's findings are so compelling because he's familiar with these kinds of cases. Now, I think he, I think, I said differently than counsel. In fact, the case he's talking about, really the environmental case that you're talking about, actually helps us because in that case, I know a little bit about this stuff. I used to be on the court of claims, so it's claims against the state. And in this one, there was a dumping of some fuel from a truck onto the highway. And the state said, you better get out there and get that cleaned up right away. And so they got somebody to come out and to do it on an emergency basis. And there was no exact amount agreed to. And so what happened was that the contractors was, that one had blank spaces and it implied that the party interest was the state. When it wasn't the state, the contracting party were the people that were in the fuel service that were driving the truck. And they said in that decision, we're going to enforce the emergency stuff. You've got to pay the emergency stuff. Okay, you didn't know what the amount was. You're going to pay that. But what happened was here, later they submitted more invoices after you got rid of, abated the fuel problem for other work that hadn't been agreed on. And there was specific provision in the contract. If there's going to be more work to be done, we'll pay for it. And so that distinguishes that case. I'll let you finish up your thoughts, counsel. Okay. If there are any other questions, let's see. It's, again, in conclusion, in page, counsel stipulates to a contractor, and the judge is saying here, beginning on page 9, it only takes until page 12, that he gets everything right because he's had these cases before and he even knew the people. But anyway, thank you. Any other questions? No questions. All right, thank you, counsel. Thank you. I'm going to go a little bit rapid fire, okay? On the first one, let's go back to that contract. What I said at trial was that Caseyville Hospitality Group signed that document. That's a contract. But that doesn't mean it's an enforceable contract. I'm going to read from the set, okay? And, again, this is paragraph 35 of the set decision. It says, even assuming that each party admitted there was a contract they believed to be binding, that does not remove from the court's purview the question whether the agreement was valid and an enforceable contract. Although the parties manifested the intent to make a contract, if the contract is unduly uncertain and indefinite, there is no contract for a court to enforce. And that's what I want to leave the court with here today. There's not an enforceable contract here. There's a document.  But Mr. Blinn's recitation of set is accurate, though, right? Set did bind that an emergency contract existed. It was just a continuing one that was a problem. And that's what I'm saying here is that they came in and they signed this. We didn't even talk about the duress. They didn't raise that. But the set also talks about the duress. But they did. And this wasn't emergency work wiping this stuff down, okay? Emergency work is there's a spill, a tanker spill on the highway, right? You've got to get that stuff there. Or the roof's about to come down and you've got to shore it up and put a tarp over it. But didn't Mr. Amir make some statement that he may not have said it was an emergency, but it's like I've got to get this hotel back up and running. As a business person, yes. I mean, I get it. I'm going to be making my money. Exactly. He did say that. But not an emergency. I need to make money. Now, I want to ask you to go back to the transcript. Dan Long didn't testify, okay? So I don't know why we're talking about Dan Long. And the fact that the judge knew Dan Long seems odd that we're talking about Dan Long. That's not a fact that this court should consider. But Dan Long was talked about through different people who testified. Dan, he was mentioned, okay? But there's no testimony in the record that an insurance company will only pay off of Xactimate. There's no testimony in the record from anybody that says this is how it's done, other than the plaintiff saying this is industry. In fact, that is one tool. It's like LexisNexis and Westall, right? Those are tools we use to research. Xactimate is one tool. There are other software programs that do the same thing. And let me tell you, if we want to go outside the record and just talk about experience, in my representing folks against insurance companies, they rarely pay everything on the Xactimate. In fact, that's what we do. We argue about the work that needs to be performed, that wasn't performed, whether it was performed and it shouldn't have been performed. So this idea that Xactimate was this gold standard that would be paid by the insurance company is just wrong. There's no testimony in the record to that. The Xactimate was never showed to my client. He didn't agree to that. And finally, and this is where I am because it's too much time, any discussion about reasonable, fair, industry standard, all of that, would be wonderful if he had not pleaded his case in contract only. That's not the standard for a breach of contract. That's the standard for quantum network. That's the standard for unjust enrichment. That's the standard for quasi-contract. And like they said in, I think, Roberson Orr said, maybe he amends his petition when he goes back down to include that. But we don't consider it here because it's not the standard of breach of contract. Thank you, Your Honors. Any other questions? All right. Thank you very much. We will take this matter under advisement and issue a ruling in due course. Thank you. Have a good day.